## ROBINSON *v.* STATE.

### Opinion delivered May 15, 1911.

1. HOMICIDE—DYING DECLARATIONS.—Whether declarations were made under a sense of impending death, so as to render them admissible as dying declarations, is a preliminary question for the trial court, and its finding will not be disturbed if there is evidence to support it. (Page 211.)

2. HOMICIDE—DYING DECLARATIONS.—In determining whether declarations were made under a sense of impending death, the court may consider all the facts and surrounding circumstances, such as the character of the wound itself, the statement by the attending physician that if deceased had anything to say to his parents he had better say it, the declaration of deceased that he could not live, and the fact that he died shortly afterwards. (Page 211.)

3. WITNESSES—IMPEACHMENT.—Where a witness testified that he knew the reputation of a certain witness for truth and morality, and that it was bad, it was not error to refuse to permit the witness on cross examination to testify as to specific acts of bad conduct on the part of such witness. (Page 211.)

Appeal from Pulaski Circuit Court, First Division; *Robert J. Lea,* Judge; affirmed.

*McNemer & McNemer, Mehaffy, Reid & Mehaffy* and *Scipio A. Jones,* for appellant.

1. The ruling of the court in refusing to permit appellant's counsel to argue to the jury the responses of the witness, Sykes, to questions propounded by the State's attorney as to the reputation of the witness, Gordon, for truth and morality, and in excluding same from the jury, was materially prejudicial to appellant. 8 Enc. Pl & Pr. 115; *Id.* 116; 11 Cush. (Mass.) 245; 132 Ind. 539; 97 Cal. 171; 88 Ala. 26; 99 Ind. 290; 30 Am. & Eng. Enc. of L. 1077.

2. There was no sufficient foundation for the admission of the so-called dying declaration. The witness stated that deceased said to her, "I cannot live this way;" but on a former occasion she had testified that he said, "I cannot live this way; do something for me." To render such declarations admissible, the deceased must have abandoned all hope of recovery. "If deceased had the slightest of recovery, the declaration is inadmissible. 10 Am. & Eng. Enc. of L. 367; 56 Ky. 310; 58 Ark. 54; 2 Ark. 229; 139 Ill. 81.

*Hal L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellee.

1. It is never permissible to impeach a witness by proving specific acts of immorality or untruthfulness. Kirby's Dig., § 3138; 70 Ark. 107; 59 Ark. 50; 2 Wigmore, Ev., § 987 *et seq.*

It was proper for the State upon cross examination to investigate the extent of the impeaching witness's knowledge with ref-

erence to the reputation of the party sought to be impeached. · 71 Ark. 180; 2 Wigmore, Ev. § § 988, 1111; 53 Ark. 387; 67 Ark. 117.

2. The dying declaration of deceased was properly received in evidence. Its admissibility was a question for the court. 2 Wigmore, Ev. § 1738; Id. § 1451; 97 Ill. 106; 58 Ark. 54; 52 Ark. 229.

HART, J.   J. M. Robinson was indicted for the crime of murder in the first degree. He was tried before a jury and convicted of manslaughter, his punishment being assessed at a term of seven years in the State penitentiary.

From the judgment rendered upon the verdict, Robinson has. duly prosecuted an appeal to this court.·

A careful consideration of the evidence convinces us that it is abundantly sufficient to support the verdict. It is useless to abstract the testimony because counsel for appellant concede that fact. They seek a reversal of the judgment upon other grounds. They contend that the court erred in admitting the statement of. deceased as a dying declaration. The declarations in question and the circumstances under which they were made are as follows:

Cornelius Lockhart was shot by appellant one evening at the corner of Eighth and Broadway streets in the city of Little Rock, Arkansas. Soon afterwards he was removed to the city hospital, and died about 3 hours after being received there. He was shot with a 38-caliber bullet, which entered 1½ inches to the left of his navel and ½-inch above. The bullet passed through his intestines and other structures and right solar muscle; that is, the muscle at the back of the abdomen. After Lockhart had been placed in bed, and the physician at the hospital had examined him, his father and mother came in. The physician said to Lockhart: "Boy, if you have anything to tell, you had better tell your father or mother." Lockhart said: "I can't live." His stepmother said: "Who shot you, Cornelius?" and he said: "Dr. Robinson." She then asked him: "Did you have any words with him tonight or this evening?" Cornelius replied: "No." His stepmother then said: "Was Alma in the buggy with him?" and Cornelius answered: "Yes, ma'am." The physician then requested them not to talk to him any more. Alma was the wife of

Cornelius Lockhart, and, according to the theory of the State was in the buggy with the appellant, Dr. Robinson, when he shot Cornelius Lockhart. Appellant testified that she had been in the buggy with him, but had gotten out of it and gone home a few minutes before the shooting.

"Whether the declarations were made under a sense of impending death so as to render them admissible as dying declarations is a preliminary question of law for the trial court, and its finding will not be disturbed if there is evidence to support it." *Jones* v. *State,* 88 Ark. 579, and cases cited.

Counsel for appellant do not object to the competency of the evidence, but contend that the declarations were not made under a sense of certain and impending death. In determining this question, the court could consider all the facts and surrounding circumstances, such as the character of the wound itself, the statement by the attending physician that if deceased had anything to say to his parents he had better say it, the declaration of deceased himself that he could not live, and the fact that he died shortly afterwards. We think it evident that the declarant realized his situation, and the court did not err in admitting his declarations. *Jones* v. *State, supra,* and cases cited; *Gipe* v. *State,* 165 Ind. 433, 1 L. R. A. (N. S.) 419, and case note; *Willoughby* v. *Territory,* (Okla.) 8 Am. & Eng. Ann. Cas. p. 537, and case note.

It is not contended by counsel for appellant that the court erred in excluding certain testimony. J. W. Gordon was one of the principal witnesses for the State.

The defendant introduced J. H. Sykes, who testified that he knew the reputation of the witness, Gordon, for truth and morality, and that it was bad. On cross examination, Sykes testified to several disreputable acts that he had heard that Gordon had been guilty of, and his testimony as to these specific acts was excluded from the jury. Counsel for appellant strongly insist that the court erred in this regard, and also in not permitting them to argue to the jury the responses of the witness Sykes as to these specific acts. They complain that, because the evidence of these particular acts of bad conduct of the witness Gordon was brought out on the cross examination of Sykes, the exclusion of it was prejudicial to the rights of appellant. We do not

think so. Sykes testified that he knew the reputation of Gordon for truth and morality, and that it was bad. On cross examination he stated that he had heard a number of persons talking about it, but could not remember their names. His answers on cross examination as to the number of persons and the times and places he had heard Gordon's character discussed was not withdrawn from the jury. This is shown by the fact that the court, in passing upon the question, told the jury that the credit it should give to Sykes's testimony on that line may be strengthened or weakened by the number of persons he had heard talk about it. It was only his evidence as to what he had heard as to specific acts of bad conduct on the part of Gordon that was withdrawn from the jury, and no prejudice could have resulted to appellant by the action of the court in withdrawing from the consideration of the jury such testimony.

No other assignments of error are presented to reverse the judgment, and it will be affirmed.